Filed 5/29/13  P. v. Simpson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054072 |
| v. | (Super.Ct.No. FVI1100741) |
| CALLIE MARIE SIMPSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed with directions.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Callie Marie Simpson appeals a judgment entered after her motion to withdraw her guilty plea was denied. She contends that the denial of the motion was an abuse of discretion and, in the alternative, that she should be allowed to withdraw her plea because the trial court remanded her into custody pending her motion to withdraw her plea, thus violating her due process right to the benefit of her plea bargain, which provided that she could remain free of custody pending sentencing. She also contends that her right to equal protection was violated by the trial court's failure to award her presentence conduct credits pursuant to the version of Penal Code section 4019 which became operative on October 1, 2011.

We will affirm the judgment but will remand for recalculation of defendant's presentence custody credits.

PROCEDURAL HISTORY

Defendant was charged with one count of burglary of an unoccupied residence. (Pen. Code, § 459.)[1] She entered a plea of guilty pursuant to a plea agreement which provided for probation with the condition that she serve 180 days on work release. She was released pending sentencing subject to a *Cruz*[2] waiver, which provided that she waived her right to withdraw her guilty plea if the court did not abide by the agreement. She agreed that the court would not be bound by the plea agreement if, among other

---

[1] All further statutory citations refer to the Penal Code.

[2] *People v. Cruz* (1988) 44 Cal.3d 1247, 1254.

2

things, she failed to report to probation as ordered, committed a new offense or failed to appear for sentencing.

On the date set for sentencing, defendant appeared in court with retained counsel. She requested a continuance to permit her newly retained attorney to determine whether to file a motion to withdraw the guilty plea. The trial court continued the sentencing hearing in order to permit counsel to determine whether there was any viable basis for withdrawing the plea. However, the court stated that because defendant chose not to proceed with sentencing as provided for in the plea bargain, she would "return to [her] status at the time she entered the plea." The court remanded defendant into custody and set bail at $50,000. The court set a new date for sentencing and/or a motion to withdraw the plea.

Defendant filed a motion to withdraw her guilty plea. At the hearing on the motion, both defendant and the deputy public defender who had represented her at the time she entered in to the plea agreement testified.[3] After argument, the court denied the motion and continued the sentencing hearing. At the sentencing hearing on July 22, 2011, the court granted probation, as provided for in the plea agreement, subject to conditions including service of 180 days on work release.

---

[3] A different deputy public defender represented her during the entry of the plea.

3

Defendant filed a timely notice of appeal and obtained a certificate of probable cause on the assertion that the plea was illegally obtained based on the grounds asserted in defendant's motion to withdraw the guilty plea.[4]

FACTS

At the entry of plea hearing, the parties stipulated that the police reports contained a factual basis for the plea. The police report, in pertinent part, states that on March 31, 2011, while conducting a patrol around the abandoned housing tracts at George Air Force Base, deputies Vega and Snyder found defendant loading scrap metal into her vehicle. She was taken into custody. After waiving her *Miranda*[5] rights, defendant stated that she had dropped her boyfriend, David Skaggs, off at the location around 8:00 a.m. She stated that she left the location and returned around 2:00 p.m. to bring him food and to load the materials that he had gathered into her vehicle. Skaggs left to collect scrap metal at another location. Defendant used a pickax, a crowbar and other tools to "complete the task," and loaded the scrap metal into her vehicle. She admitted that she knew that her actions constituted theft. She admitted that she had removed scrap metal from the location before and had sold it for $80 to $100 each time. She had planned to sell the material this time, and expected to receive the same amount for it.

The deputies were unable to locate Skaggs.

[4] On July 20, 2011, defendant filed a notice of appeal, stating it was taken from the judgment entered on July 7, 2011. Defendant was not sentenced until July 22, 2011, however. On appeal, defendant agrees that the notice of appeal filed on July 28, 2011, is the operative notice of appeal.

[5] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

<u>LEGAL ANALYSIS</u>

1.

THE COURT PROPERLY DENIED THE MOTION

TO WITHDRAW THE GUILTY PLEA

*Background.*

Defendant's motion to withdraw her guilty plea rested on the contention that her attorney provided ineffective assistance of counsel in that he failed to investigate possible defenses, failed to discuss the case with her adequately, and failed to obtain a presentence probation report prior to the entry of defendant's plea. She also contended that the probation report recommended some probation terms not contemplated by the plea agreement. She asserted that she would not have entered into the plea agreement if she had been properly advised both of the elements of burglary and of the probation terms to which she objected.[6]

At the hearing on the motion, defendant testified that her attorney, James Liu, did not inform her that entry into a building with the intent of committing a crime is an element of the crime of burglary. Because she had not entered the building, she testified, she would not have pleaded guilty if she had known that entry was an element. She testified that the person who did the entry was a homeless person and that entering a plea was the only way she could get out of jail to find him. She said that the deputies who arrested her only did so because they could not find her accomplice.

---

[6] The probation terms to which defendant objected required her to undergo drug counseling or treatment. At sentencing, the court apparently struck those conditions.

Liu testified that he generally does not explain to clients the specific elements of charged offenses. He generally goes over the facts of the case with his clients and lets them know what the merits of the case are and the likelihood of success at trial. He also discusses their maximum exposure and whether the offer seems fair. He would, however, discuss any particular element that he thought might be problematic. He did not recall specifically what he had discussed with defendant, but his normal practice would be to discuss any statements made by the defendant, as reflected in the police report. He did not contradict defendant's testimony that he did not go over the elements with her. Although he did not recall his discussion with defendant, his normal practice is to discuss possible witnesses with his clients, and he was certain that defendant did not mention to him that there was a potential witness and that she did not tell him she wanted to get out of jail to find that witness. If she had told him that, he would have told her that pleading guilty was not the way to go about trying to prove her innocence.

Liu testified that he was aware from the police report that defendant had made admissions. He said he did not think it would be wise to go to trial, in light of the 180-day work release offer.

Defendant testified that she did not think that Liu provided ineffective assistance of counsel, and her attorney stated during argument that they were not arguing that Liu was ineffective. He said, "We feel that it would have been nice if [he] had discussed these elements, but we believe he did a competent job." He then stated that their argument was that defendant was not advised that entry was an element of the offense, and that because she did not enter the building, she would not have pleaded guilty if she

had been told of that element. He contended that in the absence of evidence that defendant entered the building, she was at most an accessory to the burglary.

The trial court found that according to defendant's own testimony, she took the plea in order to get out of jail, with the idea that she could locate a witness who could exonerate her. Further, the court found, defendant stated when she entered her plea that she had had enough time to discuss the case with her attorney, and that she understood all of her rights, potential defenses, penalties, punishments and future consequences. She also stated that she understood that she was waiving certain rights, and acknowledged that if she was granted probation, there would be additional terms and conditions that would be ordered which had not been discussed. Based on those facts, the court found that defendant had not demonstrated by clear and convincing evidence that she acted under ignorance, duress, fraud, or inadvertence, or that there was a mistake which overcame the exercise of her judgment. Accordingly, the court denied the motion.

*Review Is Not Forfeited.*

The Attorney General contends that defendant has forfeited review of the motion because during the hearing, both defendant and her attorney expressly disavowed any contention that the public defender who represented her in connection with the plea agreement was ineffective. However, defendant now contends that the issue is not one of ineffective assistance of counsel but of due process. The trial court resolved the motion by finding that defendant did not meet her burden of demonstrating by clear and convincing evidence that she entered the plea based on ignorance of the elements of the

7

offense.  It did not address the original ineffective assistance of counsel contention.  We will address the ruling as rendered by the trial court.

*The Trial Court Properly Denied the Motion.*

Section 1018 provides, in pertinent part, "On application of the defendant . . . the court may,  . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."  The defendant has the burden of showing good cause to permit the withdrawal.  Good cause requires a showing that the defendant was acting under mistake, ignorance, or any other factor which overcame the exercise of the defendant's free judgment.  (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 917.)  A decision to deny a motion to withdraw a guilty plea ""'rests in the sound discretion of the trial court'" and is final unless the defendant can show a clear abuse of that discretion.  [Citations.]  Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them.  [Citation.]"  (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

Here, the evidence supports the trial court's finding that defendant did not enter her guilty plea because she was ignorant of the entry element but did so because she thought that if she could locate her missing accomplice, he could exonerate her.  That is, after all, exactly what defendant said under oath.  The court was not required to accept defendant's further contention that she would not have entered the plea if she had been told that entry is an element of burglary:  A trial court is not required to accept self-serving and uncorroborated testimony as to a defendant's reasons for seeking to withdraw a guilty plea.  (*In re Alvernaz* (1992) 2 Cal.4th 924, 938.)  Accordingly, defendant has not

8

met her burden of demonstrating that the trial court abused its discretion in denying her motion. (*People v. Fairbank*, *supra*, 16 Cal.4th at p. 1254.)

2.

DEFENDANT'S CONTENTION THAT THE TRIAL COURT VIOLATED DEFENDANT'S DUE PROCESS RIGHTS BY REMANDING HER INTO CUSTODY PENDING SENTENCING AND/OR THE MOTION TO WITHDRAW THE GUILTY PLEA IS NOT COGNIZABLE ON APPEAL

Defendant contends that the trial court violated the plea agreement by remanding her into custody pending sentencing and/or a hearing on a motion to withdraw the guilty plea. The plea agreement called for defendant's release pending sentencing, and she contends that she complied with the plea agreement by appearing on the date set for sentencing. Because she was in compliance with the agreement, she contends, the trial court's violation of the agreement by refusing to allow her to remain out of custody until sentencing actually occurred mandates that she be allowed to withdraw her plea.

The Attorney General contends that defendant forfeited this claim by not raising it in her motion to withdraw her plea. She relies on the well-known rule that a party may not challenge a trial court's ruling on a ground not raised in the trial court. Defendant counters that she "objected strenuously" when she was taken into custody and that it would have been futile to raise the same claim in her motion to withdraw her guilty plea. She contends that failure to object does not bar appellate review when an objection would have been futile. In fact, however, defendant did *not* object when the court ordered her

9

remanded. In any event, her claim is barred by her failure to obtain a certificate of probable cause permitting review of that issue.

Section 1237.5 provides in relevant part: "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere . . . except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court." Notwithstanding the broad language of section 1237.5, it is settled that "issues regarding proceedings held subsequent to the plea for the purpose of determining the degree of the crime and the penalty to be imposed" may be raised without issuance of a certificate. (*People v. Panizzon* (1996) 13 Cal.4th 68, 74.) Any issue which challenges the validity of the plea does require a certificate of probable cause, however, regardless of how or when the issue arose. (*Id*. at p. 76.) For purposes of determining whether a certificate is required, "'the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made.' [Citation.]" (*Ibid.*) "Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5." (*Ibid.*)

Here, although the trial court's alleged violation of the plea bargain arose after the entry of the plea, defendant's assertion that due process mandates that she be allowed to withdraw her plea in effect challenges the continuing validity of the plea, in light of the

10

trial court's actions. Consequently, defendant was required to obtain a certificate of probable cause to address this issue. Although she did obtain a certificate of probable cause, it is limited to review of "the grounds asserted by defendant in [her] motion to withdraw the [guilty] plea." This limitation precludes us from considering this issue, because it was not raised in defendant's motion.[7]

3.

DEFENDANT IS ENTITLED TO RECALCULATION OF PRESENTENCE

CUSTODY CREDITS

*Equal Protection Principles Do Not Mandate Application of the Current Version of Section 4019 to Defendant.*

A defendant is entitled to actual custody credit for "all days of custody" in county jail and residential treatment facilities, including partial days. (§ 2900.5, subd. (a); see also *People v. Smith* (1989) 211 Cal.App.3d 523, 526.) Section 4019 provides that a criminal defendant may earn additional presentence credit against his or her sentence for performing assigned labor (§ 4019, subd. (b)), and for complying with applicable rules and regulations of the local facility (§ 4019, subd. (c)). These presentence credits are collectively referred to as conduct credits. (*People v. Dieck* (2009) 46 Cal.4th 934, 939.)

---

[7] The certificate of probable cause we have quoted was issued in connection with her operative notice of appeal. As we have mentioned above, defendant also filed a premature notice of appeal, and the trial court issued a certificate of probable cause in connection with that notice of appeal. The issues listed in that certificate also do not encompass defendant's claim that she is entitled to withdraw her plea because of the trial court's violation of the plea agreement.

11

Section 4019 has been amended multiple times. Before January 25, 2010, defendants were entitled to one-for-two conduct credits, which is two days for every four days of actual time served in presentence custody. (Former § 4019, subd. (f), as amended by Stats. 1982, ch. 1234, § 7, pp. 4553-4554.) Effective January 25, 2010, the Legislature amended section 4019 to provide that prisoners, with some exceptions, earned one-for-one conduct credits, which is two days of conduct credit for every two days in custody. (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 50.) Effective September 28, 2010, the Legislature again amended section 4019. (Stats. 2010, ch. 426, §§ 1-2, 5.) Subdivisions (b) and (g) restored the one-for-two presentence conduct credit calculation that had been in effect prior to the January 25, 2010, amendment.

Most recently, the Legislature amended section 4019 to provide for up to two days credit for each four-day period of confinement in local custody. (§ 4019, subds. (b) & (c).) This scheme reflects the Legislature's intent that if all days are earned under section 4019, "a term of four days will be deemed to have been served for every two days spent in actual custody." (§ 4019, subd. (f).) This version of section 4019 became operative on October 1, 2011. (Stats. 2011, ch. 39, § 53.)

Defendant's crime was committed on March 31, 2011, and she was sentenced on July 22, 2011, before the operative date of the current version of section 4019. She contends, however, that because "[i]ndividuals subject to the former and current versions of section 4019 are similarly situated," the equal protection clause requires that the more liberal current version of section 4019 applies to her. We disagree.

12

In *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*), the California Supreme Court addressed contentions that the version of section 4019 effective on January 25, 2010, must be held to apply retroactively, in part because prospective application would violate the equal protection clauses of the state and federal Constitutions. The court stated:[8]

"The concept of equal protection recognizes that persons who are *similarly situated* with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, '"[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner."' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."' [Citation.] [¶] . . . [T]he important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. *That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows.*" (*Brown*, *supra*, 54 Cal.4th at pp. 328–329, first italics in original, second italics added.)

---

[8] The discussion of *Brown* which follows is excerpted, with minor alterations, from *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1551-1552. We note that *Brown* was decided after defendant filed her opening brief, and because she does not address it in her reply brief, despite the Attorney General's discussion of the case, we assume that she concedes that *Brown* is dispositive.

13

The court rejected the argument that its decision in *People v. Sage* (1980) 26 Cal.3d 498 (*Sage*) required a contrary conclusion. (*Brown*, *supra*, 54 Cal.4th at pp. 329–330.) The version of section 4019 at issue in *Sage* authorized presentence conduct credit for misdemeanants who later served their sentence in county jail, but not for felons who ultimately were sentenced to state prison. The *Sage* court found this unequal treatment violative of equal protection, as it found no "rational basis for, much less a compelling state interest in, denying presentence conduct credit to" felons. (*Sage*, at p. 508.)

*Brown* acknowledged that one practical effect of *Sage* "was to extend presentence conduct credits retroactively to detainees who did not expect to receive them, and whose good behavior therefore could not have been motivated by the prospect of receiving them." (*Brown*, *supra*, 54 Cal.4th at p. 329.) Nevertheless, it declined to read *Sage* in such a way as to foreclose a conclusion "that prisoners serving time before and after incentives are announced are not similarly situated." (*Brown*, at p. 330.) *Brown* explained: "The unsigned lead opinion 'by the Court' in *Sage* does not mention the argument that conduct credits, by their nature, must apply prospectively to motivate good behavior. A brief allusion to that argument in a concurring and dissenting opinion [citation] went unacknowledged and unanswered in the lead opinion. As cases are not authority for propositions not considered [citation], we decline to read *Sage* for more than it expressly holds." (*Brown*, at p. 330.)

Finally, *Brown* rejected the notion the case before it was controlled by *In re Kapperman* (1974) 11 Cal.3d 542 (*Kapperman*), the case on which defendant relies in this case. In *Kapperman*, the court held that equal protection required retroactive

14

application of a statute granting credit to felons for time served in local custody before sentencing and commitment to state prison, despite the fact that the statute was expressly prospective. (*Brown*, *supra*, 54 Cal.4th at p. 330.) *Brown* found *Kapperman* distinguishable: "Credit for time served is given without regard to behavior, and thus does not entail the paradoxical consequences of applying retroactively a statute intended to create incentives for good behavior. *Kapperman* does not hold or suggest that prisoners serving time before and after the effective date of a statute authorizing *conduct* credits are similarly situated." (*Brown*, at p. 330.)

In *People v. Ellis*, *supra*, 207 Cal.App.4th 1546, the court found *Brown*'s equal protection reasoning applicable to the current version of section 4019.[9] (*People v. Ellis*, at p. 1552.) We agree with that court's analysis. Accordingly, we reject defendant's claim that she is entitled to additional conduct credits at the rate provided for by current section 4019.

---

[9] In *People v. Lara* (2012) 54 Cal.4th 896, the California Supreme Court noted in a footnote that the same equal protection analysis applies to the current version of section 4019. (*People v. Lara*, at p. 906, fn. 9.) This statement is dictum, in that no equal protection claim under the current version of section 4019 was raised in that case.

*Remand Is Required for Recalculation of Defendant's Presentence Custody Credits.*

Respondent points out that although defendant was given credit at sentencing for 14 actual days spent in custody prior to sentencing, that number encompasses only the days defendant spent in custody before she entered her guilty plea and was released pending sentencing. However, defendant was remanded into custody on May 11 and was released on a date not reflected in the record. Accordingly, defendant is entitled to credit for some number of additional days in custody prior to sentencing. (§ 2900.5, subd. (a).) Because the record does not reflect the number of days defendant spent in custody between her remand and the date of her sentencing, we will remand the cause to the trial court for the limited purpose of determining and awarding credit for the appropriate number of actual days defendant spent in custody prior to sentencing, pursuant to section 2900.5, subdivision (a). The court must also determine and award conduct credits based upon the total number of actual days defendant spent in custody, pursuant to the version of section 4019 which was in effect on March 31, 2011.

## DISPOSITION

The cause is remanded for the limited purpose of determining and awarding credit for the appropriate number of actual days defendant spent in custody prior to sentencing, pursuant to section 2900.5, subdivision (a), and determining and awarding conduct credits based upon the total number of actual days defendant spent in custody, pursuant to the version of section 4019 which was in effect on March 31, 2011, the date of defendant's offense. The superior court is directed to conduct a hearing for this purpose

16

no later than 30 days after the finality of this opinion and to issue amended sentencing minutes reflecting the corrected award of presentence custody credits, both actual and conduct.

The judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

RAMIREZ

P. J.

CODRINGTON

J.